UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORTHLAND CENTER MICHIGAN, LLC,

    Plaintiff,                                         Civil Action No. 15-CV-13841

vs.                                                 HON. BERNARD A. FRIEDMAN

CITY OF SOUTHFIELD,

    Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on defendant's motion for summary judgment [docket entry 23]. This matter is fully briefed, so the Court, under E.D. Mich. LR 7.1(f)(2), will dispense with a hearing.

The following facts are summarized from the parties' briefs; where there is disagreement, the Court views the facts in the light most favorable to plaintiff.

From December 2008 to September 2014, plaintiff operated the Northland Center Mall in Southfield, Michigan. Several business leased space in the mall. Water services were provided by the South Oakland County Water Authority ("SOCWA"), which delivered water via two main entry points—the north and south mains. SOCWA, after reading its meters, would bill defendant, who, relying on SOCWA's meter readings, would in turn bill plaintiff. Plaintiff, after reading its internal mall meters, would then bill its individual tenants.

Four problems arose under this billing procedure: First, in addition to billing plaintiff for all mall properties combined, defendant also directly billed two of plaintiff's tenants—Wendy's and CSL Plasma. The water delivered to Wendy's and CSL Plasma was not

counted twice because defendant agreed to subtract their charges from plaintiff's bill. Nevertheless, plaintiff's alleges its water bill was too high. Second, defendant allegedly operated an improper "flow-through" on the mall property. That is, defendant did not use its own pipe network to deliver water to Wendy's and CSL Plasma—its own customers—but plaintiff's pipe network, and specifically the north water main. Third, in 2011, a leak in the structurally-unsound north main caused water to gush directly into the storm sewer for several days. Fourth, plaintiff alleges that from 2009 to the present, defendant systematically neglected to maintain the mall's water system, which resulted in "substantial water losses" for which plaintiff was unjustly charged. Pl.'s Br. p. 8.

By early 2014, the Northland mall was financially failing. In May 2014, its chief lender, 21500 Northwestern High Holdings, LLC, filed a complaint in Oakland County Circuit Court, requesting that a receiver be appointed. The state court did so in September 2014.

In September 2015, the receiver sold the mall property to defendant for $2.4 million. The Purchase Agreement, Section 12, Prorations and Adjustments, stated:

> (b) Electricity, gas, and telephone charges based, to the extent practicable, on final meter readings and final invoices, with Seller paying those amounts which accrued and/or are attributable to the period prior to or on the date of Closing. At Closing Purchaser shall be entitled to a credit against the Purchase Price in an amount equal to the then outstanding water and sewer charges against the Real Property, which Purchaser and Seller acknowledge and agree, for the purposes of this Agreement and this Closing, total $699,138.83 as of September 28, 2014 and total $151,978.90 from September 29, 2014 through August 31, 2015. Seller acknowledges and agrees the credit against the Purchase Price at Closing shall be in the sum of the above amounts plus the outstanding water and sewer charges against the Real Property as of the date of Closing. Purchaser will take title to the Real Property subject to such outstanding charges.

On October 8, 2015, the state court entered an order approving and confirming the sale of the mall property. On October 30, 2015, plaintiff filed the instant complaint, alleging that Southfield, due to the flow-through, leakage, and negligent repair, systematically overcharged plaintiff for years. The complaint has three counts: Count I, declaratory judgment that defendant overcharged plaintiff and, thus, is not entitled to the full credit it received on the sale of the mall property; Count II, defendant has been unjustly enriched "by virtue of overpayments"; and Count III, an equitable accounting, which defendant must prepare at its sole expense, that details the alleged overcharges dating back to January 2009. In February 2017, defendant filed the instant summary judgment motion.

**I.     ANALYSIS**

   **a. <u>Res judicata, collateral estoppel, laches, and equitable estoppel</u>**

Defendant argues that this action is barred by res judicata, collateral estoppel, laches, and equitable estoppel. Plaintiff responds that these doctrines are inapplicable. The Court agrees. Res judicata does not apply because this cause of action is different from the cause of action in the state court case. Collateral estoppel does not apply because the overpayment issue was not previously litigated, nor is it clear that it was essential to the judgment. Laches does not apply because defendant was not prejudiced by plaintiff's alleged delay. And equitable estoppel is inapplicable because there is no statute of limitations challenge here.

Res judicata "bars the reinstitution of the same cause of action by the same parties in a subsequent suit." *Topps-Toeller, Inc. v Lansing*, 209 N.W.2d 843, 847 (Mich. Ct. App. 1973). Here, the original judgment was a state court order confirming the receiver's sale of the mall property to defendant, whereas the current action is a suit by plaintiff for monetary damages because defendant allegedly miscalculated plaintiff's water bill. These causes of action, while

related, are not the same, so the doctrine of res judicata does not apply. The Court now turns to collateral estoppel.

Collateral estoppel "bars the relitigation of issues previously decided when such issues are raised in a subsequent suit by the same parties based upon a different cause of action." *Id.* The Michigan Court of Appeals recently summarized the doctrine as follows:

> Generally, application of collateral estoppel requires (1) that a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) that the same parties had a full and fair opportunity to litigate the issue, and (3) mutuality of estoppel.
>
> In the subsequent action, the ultimate issue to be concluded must be the same as that involved in the first action. The issues must be identical, and not merely similar. In addition, the common ultimate issues must have been both actually and necessarily litigated.
>
> To be actually litigated, a question must be put into issue by the pleadings, submitted to the trier of fact, and determined by the trier. The parties must have had a full and fair opportunity to litigate the issues in the first action.
>
> For collateral estoppel to apply, the parties in the second action must be the same as or privy to the parties in the first action. A party is one who was directly interested in the subject matter and had a right to defend or to control the proceedings and to appeal from the judgment, while a privy is one who, after the judgment, has an interest in the matter affected by the judgment through one of the parties, as by inheritance, succession, or purchase.

*Rental Props. Owners Ass'n of Kent Cty. v. Kent Cty. Treasurer*, 866 N.W.2d 817, 834–35 (Mich. Ct. App. 2014) (internal citations and quotation marks omitted).

According to Restatement Second, Judgments, "an issue is not actually litigated if . . . it is the subject of a stipulation between the parties." 47 Am. Jur. 2d Judgments § 494. And "in a judgment entered by confession, consent, or default, none of the issues is actually litigated." *Id.* State court orders that merely rubber stamp an agreement of the parties "normally

4

fail to meet the legal requirements of collateral estoppel." *In re Brazieka*, No. 16-48508, 2017 WL 816871, at *8 (Bankr. E.D. Mich. Mar. 1, 2017). Collateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally. *People v. Gates*, 452 N.W.2d 627, 631 (Mich. Ct. App. 1990).

Defendant's collateral estoppel argument suffers from several deficiencies. First, the issue of overpriced water was not actually litigated in the original action. Under Michigan law, to be actually litigated an issue must be put before a trier of fact. Here, the receiver and defendant agreed to a sale of the mall property and drafted and signed a corresponding purchase agreement; this agreement was then finalized by a pro forma state court order. No trier of fact was involved. Second, defendant has not shown that resolving the water bill issue was essential to the judgment.[1] Of course, the water bill was, to some extent, needed to calculate the final sale amount. But this does not mean that the state court's decision to approve the sale depended in any way on the bill itself, only that the bill was used for the math in the purchase agreement.

Third, the state court's order was similar to a consent judgment or stipulation, neither of which is given preclusive effect. Finally, insofar as the state court's pro forma order did address the water bill issue, defendant has not shown what its basis was for so holding. For these reasons, the Court cannot give the state court's order preclusive effect.

Regarding laches, defendant has not explained how it was prejudiced by plaintiff's alleged delay in filing. Without prejudice, defendant's laches argument fails. *See Knight v. Northpoint Bank*, 832 N.W.2d 439, 442 (Mich. Ct. App. 2013). As for equitable estoppel, defendant has not shown how the doctrine—which requires a *plaintiff* to show that a *defendant* induced it to believe that the statute of limitations would not be enforced—applies in

---

[1] Nor, given that the state court order stated that it was not a final judgment, is it clear the state court's order was a final judgment. But as stated above, defendant's collateral estoppel argument fails even assuming this element is met

5

the instant case. Equitable estoppel is an argument properly made by plaintiffs, not defendants. Moreover, there is not even a statute of limitations issue in this case.

### b. **Rooker-Feldman**

Defendant next argues that this action is barred by the *Rooker-Feldman* doctrine. Plaintiff argues that the doctrine is inapplicable because this complaint does not seek to set aside a state court judgment. The Court agrees that the *Rooker-Feldman* doctrine is inapplicable here.

The Supreme Court has explained that the *Rooker-Feldman* doctrine is limited to

> cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "[T]he pertinent inquiry after *Exxon* is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment, not simply whether the injury complained of is 'inextricably intertwined' with the state-court judgment." *Kovacic v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 606 F.3d 301, 309 (6th Cir. 2010).

Defendant argues that if the Court allows this complaint to proceed and a jury awards plaintiff damages, the Court would effectively be amending the state court order. Defendant argues the state court implicitly affirmed that plaintiff was not overcharged.

Defendant's argument ignores *Kovacic*. The pertinent question is what caused plaintiff's injury. A review of the complaint shows that the source of plaintiff's injury is that defendant allegedly overcharged plaintiff, not the state court order. Defendant's argument also misunderstands the state court order. The order did not comment on the parties' intentions or

6

motives, the merits of the parties' assumptions, or the validity of defendant's billing; nor did it award defendant monetary damages. It merely approved the parties' sale. Consequently, the order is not the source of plaintiff's injury, though it may perhaps be inextricably intertwined with it.

    c. **<u>Declaratory Judgment</u>**

Defendant next argues that the Court should exercise its discretion to dismiss Count I, the declaratory judgment count. 28 U.S.C. § 2201 states:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

And in *AmSouth Bank v. Dale*, 386 F.3d 763, 785 (6th Cir. 2004), the Sixth Circuit

> adopted a five-factor test to determine when a district court should exercise jurisdiction over a declaratory judgment:
>
> > (1) whether the judgment would settle the controversy;
> >
> > (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
> >
> > (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
> >
> > (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

> (5) whether there is an alternative remedy that is better or more effective.

Defendant argues that these five factors weigh in favor of dismissal, while plaintiff argues that they militate against dismissal. The Court finds that only factor (1) weighs against dismissal; factors (2), (4), and (5) weigh in favor of dismissal.

*Factor (1)*: The controversy here is whether defendant overcharged plaintiff. Undoubtedly, a declaration from the Court that plaintiff has a right to reimbursement would settle this controversy.

*Factor (2)*: There is no issue regarding legal relations here, so declaratory relief would clarify nothing.

*Factor (3)*: This factor is neutral.

*Factor (4)*: This factor considers whether a declaration by this Court of plaintiff's rights would unduly interfere with Michigan court proceedings. The state court order approved a purchase agreement that precisely enumerated the existing water bill. And while the order does not specifically address whether plaintiff was overcharged, as the Court stated above, the state court proceeding seems inextricably intertwined with the present case. This intertwining weighs heavily against the Court exercising its discretion to hear a declaratory relief count.

The Court believes that the state court system, where the original receivership action began, is a better forum for this claim. Plaintiff has not adequately explained why it cannot pursue this relief in that state court.

*Factor (5)*: The Court believes that the best remedy for this controversy is monetary damages, not declaratory relief. It appears that this case presents a single, clear-cut question: did defendant overcharge plaintiff? Consequently, the normal remedy seems best.

Because three out of the five factors weigh in favor of dismissal and only one factor weighs against, the Court will exercise its discretion to dismiss Count I.

### d. **Summary Judgment**

Defendant next argues that there is no genuine issue of material fact as to whether it billed plaintiff for water plaintiff did not consume. Plaintiff responds that several affidavits and depositions show a genuine issue as to whether it was overcharged.

Federal Rule of Civil Procedure 56(a) states that any party moving for summary judgment must identify "each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion

for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Here, there are genuine issues of material fact. For example, Larry Sirls testified that defendant either ignored or did not recognize its flow-through system until 2009; he also testified that this flow-through system partially consisted of old, structurally unsound pipes. Practically, then, a jury could find that for some period of time defendant delivered water to its customers through plaintiff's meter via leaky pipes, unduly increasing plaintiff's bill. Defendant argues that every piece of pipe downstream from the north meter belonged to and was solely the responsibility of plaintiff. While the Court recognizes the strength of this argument, it is notes that defendant utilized these same pipes to deliver water to Wendy's and CSL Plasma. At the very least, this presents a genuine question of whether defendant was unjustly enriched.

Defendant offers several explanations for why the parties' meter readings differ, including the mall's deteriorating infrastructure and meters, several system leaks from 2009 to 2014, and sporadic meter usage. In response, Brent Reetz testified that the mall's internal meters were working, so disparities in the north main meter and internal meter readings cannot be simply discarded. The Court does not ignore defendant's argument, but they present genuine issues of material fact as to whether plaintiff was overcharged.

Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is granted as to the declaratory judgment claim and denied as to the rest.

s/Bernard A. Friedman<br>BERNARD A. FRIEDMAN<br>SENIOR UNITED STATES DISTRICT JUDGE

Dated: April 28, 2017
      Detroit, Michigan

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 28, 2017.

s/Johnetta M. Curry-Williams<br>Acting in the Absence of Carol Mullins<br>Case Manager